UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ZACHARY HESSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:16-cv-02068 |
| | ) Chief Judge Crenshaw |
| ATLAS MORTGAGE PARTNERS, | ) |
| LLC, and KATE MATTIES, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

This is a case about $371.20 in allegedly unpaid overtime compensation. Factoring in possible liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., Zachary Hesse's damages claim could double to $742.40. Potential attorney's fees are unknown, but likely many multiples of that amount.

Hesse has filed a Motion for Summary Judgment, (Doc. No. 27), claiming there is no dispute that he worked overtime, or about the number of overtime hours he worked without proper compensation. His former employer, Atlas Mortgage Partners, LLC, and its owner, Kate Matties, oppose the Motion. (Doc. No. 31).[1] Because Hesse has not supported his Motion in the manner required by Rule 56 of the Federal Rules of Civil Procedure, it will be denied.

**I. Factual Background**

From April 1, 2015, through at least June 2016, Hesse worked full-time at Atlas. (Doc. No. 28-1 at 1-25). His hourly rate of pay was initially $10.50, but that was increased to $11.50 on June 17, 2015, and increased to $12.50 on March 1, 2016. (Id. at 1, 6, 25).

---

[1] Defendants have also filed a Motion for Leave to File a Sur-Reply (Doc. No. 36), which will be granted.

Hesse filled out his own time sheets, and provided them to Matties or an office manager for payment. (Doc. No. 32 at 2; Doc. No. 28-1 at 2-3). In those time sheets, Hesse claims to have worked anywhere between 40.5 to 50.5 in a given week.

Hesse asserts that, prior to September 30, 2015, he was paid at his regular rate of pay for all hours worked during a week. (Doc. No. 32 at7). After that date, Hesse was paid time and one-half for all hours worked in excess of 40 per week, and this practice continued throughout the remainder of his employment. (Id.). Thus, the crux of this case is the additional half of the regular rate of pay per hour for overtime worked, *i.e.* the $5.25 per hour overtime until his raise on June 17, 2016, and the $5.75 per hour overtime until, Hesse claims, Atlas first began paying time and one-half.

Based upon his time sheets, Hesse calculates that he worked 50.25 hours of overtime from April 1, 2015 to September 16, 2015, apparently leaving it to the Court to determine the amount due by analyzing the time sheets, determining the amount of overtime, and setting a figure based upon whether he was being paid $10.50 or $11.50 per hour at the time. In response to Hesse's statement of fact on this issue, Defendants assert that "[t]he documents speak for themselves." (Doc. 31 at 7 ¶ 31). However, in their response brief, Defendants state that "[c]onsidering the hours worked during the relevant workweeks, Plaintiff actually worked an aggregate total of 51.5 overtime hours, not the 50.25 he claims in his Motion for Summary Judgment," and this amounts "to a total of $361.70 in overtime wages alleged[ly] owed to Plaintiff for the relevant periods." (Doc. No. 31 at 7-8).

Not surprisingly, Hesse agrees with the larger number of hours, and, in his reply brief assert that he "is entitled to $371.20" in damages, plus a like amount in liquidated damages. (Doc. No. 35 at 2). Hence the figure set forth at the outset of this decision.

2

## II. Legal Discussion

Section 207(a) of the FLSA generally requires that employers pay employees specified hourly rates for up to 40 hours per week and pay overtime compensation of one and one-half times the regular rate for hours worked in excess of that threshold amount. 29 U.S.C. § 207. To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he "performed work for which he was not properly compensated." Moran v. Al Basit LLC, 788 F.3d 201, 205 (6th Cir. 2015) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). As the parties in this case agree, this, in turn, requires a plaintiff to establish (1) "that the plaintiff was employed by the defendant," (2) "that the defendant was an enterprise engaged in interstate commerce," and (3) "that the defendant failed to pay overtime compensation to the plaintiff for each hour worked in excess of forty hours per week." Roberts v. Corr. Corp. of Am., 2015 WL 3905088, at *8 (M.D. Tenn. June 25, 2015); see Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (identifying same as "basic elements of an FLSA claim"); Benion v. Lecom, Inc., 2016 WL 2801562, at *4 (E.D. Mich. May 13, 2016) (collecting cases stating these are the essential elements).

A review of Defendants' arguments suggest that they do not oppose Hesse's Motion for Summary Judgment on the grounds that he cannot ultimately establish a basis for at least some relief. Rather, their position is that the Motion is not adequately supported as required by Rule 56. This Court agrees.

Under Rule 56, summary judgment is only appropriate where there are no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In ruling on such a Motion, the facts and inferences to be drawn therefrom must be construed in favor of the nonmoving party, Van Gorder v. Grand

3

Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007), with the moving party always bearing the burden of demonstrating the absence of a genuine issue as to a material fact, F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 630 (6th Cir. 2014). Hesse has failed to carry that burden with respect to at least two of the three essential elements of an FLSA unpaid overtime claim.

A. **Employed By Defendant**

An employer "employs" a person under the FLSA if it "suffer[s] or permit[s]" the individual to work. Id. § 203(g). "The Supreme Court has defined work to include any time 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Chao v. Tradesmen Int'l, Inc., 310 F.3d 904, 907 (6th Cir. 2002) (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)).

"Work not requested but suffered or permitted is work time," 29 C.F.R. § 785.11, and thus an employee "must be compensated for time []he works outside of h[is] scheduled shift, even if the employer did not ask that the employee work during that time[.]" Wood v. Mid-Am. Mgmt. Corp., 192 F. App'x 378, 380 (6th Cir. 2006). This requirement, however, "applies only if the employer 'knows or has reason to believe that the employee is continuing to work' and that work was 'suffered or permitted' by the employer." Id. (quoting Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 718 (2d Cir.2001)). This is because, "[q]uite sensibly, 'an employer cannot suffer or permit an employee to perform services about which the employer knows nothing.'" Id. (quoting Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir.1998)).

Defendants argue that Hesse has failed to show that Atlas suffered or permitted him to work overtime, although they concede that "this issue may not be especially persuasive[.]" (Doc. No. 31 at 11). They note that each of his time sheets "explicitly states that 'any time over 40 hours per

4

Case 3:16-cv-02068 Document 43 Filed 10/04/17 Page 4 of 10 PageID #: 262

week must be approved by manager or owner, no exceptions.'" (Doc. No. 10 at 31, quoting Doc. No. 28-1 at 6). They also observe that "Plaintiff's Motion is silent on the issue of whether he sought authorization of his overtime hours, or if Defendants had any constructive or actual knowledge of his overtime hours," and argue it "is plausible that Defendants did not have any knowledge (actual or constructive) of Plaintiff's overtime labor, and he was conducting personal business at such time." (Doc. No. 31 at 10).

In support of their argument, Defendants contend that the Sixth Circuit decision in Craig v. Bridges Bros. Trucking, LLC, 823 F.3d 382 (6th Cir. 2016) "is clearly analogous" to the facts presented here, and quote the following from that opinion:

> No one disputes that Craig worked overtime or that she was not compensated at the statutory rate. As such, this case turns entirely on whether Bridges Brothers "knew or had reason to believe" that Craig was working overtime. Whether a party had the requisite knowledge is a question of fact. Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir.1998) ("The jury was to decide as a question of fact, not only how much of plaintiff's time spent with bandit fell within the court's definition of 'work' and would be compensable, but also how much of that time was spent with employer's actual or constructive knowledge."). It requires "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences," all of which "are jury functions, not those of a judge." Anderson, 477 U.S. at 255, 106 S.Ct. 2505. While a jury could conclude that an employer exercising reasonable diligence should know what is on its own time sheets and payroll records, we cannot say as a matter of law that a jury could not conclude otherwise here.

Id. at 391-92.

Based upon the present record, scant though it may be, the Court finds it highly unlikely that Defendants did not know, or reasonably should not have known, that Hesse worked overtime. The record indicates that, on a bi-weekly basis, Hesse submitted time sheets and those time sheets repeatedly and consistently indicated that he worked overtime. His pay stubs also reflected that, for many weeks, he worked more than 80 hours in a two week period, yet he was paid at his regular

5

hourly rate for each hour.

"[C]onstructive knowledge exists when the employer 'should have discovered it through the exercise of reasonable diligence.'" Id. at 391 (citation omitted). Even though it "is not a foregone conclusion . . . [s]ome cases may lend themselves to a finding that access to records would provide constructive knowledge of unpaid overtime work[.]" Id. That certainly seems to be the case here, but the Court need not ultimately decide the question at this time because there are other issues which preclude summary judgment in favor of Hesse.

**B. Interstate Commerce**

"Congress enacted the FLSA to remedy 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers'" in industries that affected interstate commerce. Ellington v. City of E. Cleveland, 689 F.3d 549, 552 (6th Cir. 2012) (29 U.S.C. § 202(a)). "The burden is on the employee to prove a sufficient nexus to interstate commerce as an essential element of [AN flsa] claim, Martinez v. Petrenko, 792 F.3d 173, 175 (1st Cir. 2015). This may be done in one of two ways.

"First, an employee may claim 'individual coverage' if he regularly and 'directly participat[es] in the actual movement of persons or things in interstate commerce.'" Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011); see, 29 U.S.C. § 207(a)(1) (requiring overtime "employees ... engaged in [interstate] commerce or in the production of goods for [interstate] commerce"). "Second, an employee is subject to enterprise coverage if he is employed in an enterprise engaged in commerce or in the production of goods for commerce, 29 U.S.C. § 207(a)(1)," id. at 1298-99, and the employer has at least $500,000 of "annual gross volume of sales made or business done,'" Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220

6

(11th Cir. 2010). See also, Ergashov v. Glob. Dynamic Transportation, LLC, 680 F. App'x 161, 163 (4th Cir. 2017) (discussing both individual and enterprise coverage); Gulden v. Menages, Inc, 2014 WL 4232791, at *2-3 (M.D. Tenn. Aug. 25, 2014))

Hesse's Complaint contains no factual allegations relating to Atlas's engagement in interstate commerce, nor were any arguments raised regarding that element in his Motion for Summary Judgement. When that deficiency was raised in Defendants' response brief, Hesse replied that, without "wavi[ing] any argument that Defendants have enterprise coverage as well," there "is no dispute that Plaintiff's job duties included 'answering telephones professionally,' handling bank deposits, uploading documents to 'web portals,' working with Fannie Mae loans, Freddie Mac loans, Federal Housing Administration loans, and Veterans Affairs loans; ordering credit reports, title work, flood certification and insurance; reviewing and analyzing mortgage credit packages; and documenting mortgage loan files within the CALYX processing system." (Doc. No. 35 at 5). The sole support for that assertion is a document tiled "Mortgage Office Executive Assistant," purporting to describe the position of "Mortgage Loan Executive/Processing Assistant" at Atlas. (Doc. No. 35-1).

Defendants raise both procedural and substantive arguments in relation to the interstate commerce element. Procedurally, they object to this Court's consideration of Hesse's argument and the introduction of the job description because both were presented for the first time in his reply brief, and because the job description document has not been authenticated.

While a court need not entertain arguments raised for the first time in a reply brief, see Ellington, 689 F.3d at 552, the arguments and job description were lodged in response to Defendants' argument about interstate commerce, which Hesse may well have viewed as undisputed.

7

Regardless, Defendants have been able to address them in their sur-reply, so there has been no prejudice.  As for the authentication issue, "Rule 56 no longer draws a clear distinction between authenticated and unauthenticated evidence for purposes of summary judgment," Mangum v. Repp, 674 F. App'x 531, 537 (6th Cir. 2017), and, thus, "[t]he question is not whether the [document has] already been authenticated, but rather whether it can be presented in a form admissible at trial," Franklin Am. Mortg. Co. v. Chicago Fin. Servs., Inc., 145 F. Supp. 3d 725, 731 (M.D. Tenn. 2015).

Substantively, the fundamental problem with Hesse's interstate commerce argument is that the Court has no evidence before it showing that Hesse was a Mortgage Loan Processing Assistant, and, if so, for how long.  The Complaint merely states that he "is a former employee of Defendant (Doc. No. 1, Complaint ¶ 9), and his Statement of Undisputed Facts merely indicates that he "was employed by Defendant as a full-time employee throughout the period spanning April 1, 2015 through September 19, 2015." (Doc. No. 28 at 6).  No affidavit or declaration has been submitted to establish these facts, let alone that Hesse had the job duties listed in the job description.  It may be that some actual evidence exists to support Hesse's bald assertion, but the Court is not obligated to "scour the record," Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) or "'hunt for truffles that might be buried" therein, Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir.  2011)  (citation omitted).

C. **Failure to Pay Overtime**

Based upon his time sheets, Hesse claims that Defendants failed to pay him overtime for the approximately 5½ month period between April 1, 2015 and September 15, 2015.  In response, Defendants argue that Hesse fails to take into account other payments that were made to him, including "processing" and "reimbursement" payments, which total approximately $1,200.

8

Defendants argue that extra payments can offset overtime payments due under the FLSA because "Plaintiffs are entitled to be made whole; they are not entitled to a windfall at Defendants' expense." Bray v. Dog Star Ranch, 2010 WL 889908 at *15 (W.D. Mich. Mar. 10, 2010). In response, Hesse argues that credits should generally "be limited to the same workweek or work period in which th[e] premiums were paid." Herman v. Fabri–Centers of Am., Inc., 308 F.3d 580 (6th Cir. 2002).

The Court need not venture into this dispute at this time, nor undertake the exercise of calculating the offset payments in relation to the weeks they were paid and the overtime worked during that week. The reason for that is simple: Hesse argues Defendants "cannot ask the Court to reclassify payment which were properly made to Plaintiff and to consider them as overtime payments under a different name," (Doc. No. 35 at 2), but the Court has no way of knowing what the "reimbursement" or "processing" payments were for. If they were payment for other things owed Hesse, such as commissions, then they would not be properly considered an offset to overtime. And, if they were actually payments for overtime, it has not been definitively established that the workweek for purposes of calculating pay was, as Hesse argues, from Saturday through Friday, making it impossible to determine what amount would be due for any given week.

### III. Conclusion

Even though the Court could deny Hesse's Motion on any of a number of grounds and end the inquiry at that point, it has chosen to discuss all of the arguments raised because, as Defendants apparently recognize, it will not take much for Hesse to fill the gaps in the record at the bench trial scheduled for December 12, 2017. While it certainly is within Defendants' prerogative to hold Hesse to his burden, the parties should make a serious effort to settle this case if, in fact, proof exists

9

to establish that Defendants suffered or permitted Hesse to work overtime, Atlas is in engaged in interstate commerce, and Hesse was not paid time and one-half for at least some of the hours of overtime he worked. Trying this case merely as an exercise in formality would be of little benefit to any of the parties.

An appropriate Order will enter denying Hesse's Motion for Summary Judgment.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE